Tobias Sitnick, Appellee, v. Hyman Glazer, Appellant.

Gen. No. 46,896.

First District, Second Division.

September 25, 1956.

Rehearing denied October 16, 1956.

Released for publication November 27, 1956.

Arnold Nagler, of Chicago, for appellant.

Rappaport, Clorfene & Rappaport, of Chicago, for appellee; Hamilton Clorfene, of Chicago, of counsel.

JUDGE McCORMICK delivered the opinion of the court.

The Municipal Court of Chicago in a trial heard by the court without a jury in an action based on the breach of a provision of a dissolution of partnership agreement found for the plaintiff and entered judgment for the sum of $1,937.13, from which judgment this appeal is taken.

The lawsuit grew out of a dissolution of a partnership between Tobias Sitnick, plaintiff, and Hyman Glazer, defendant, which had operated under the firm name of Alco Tension-Seal Window Company. The business which the partnership conducted was the assembling and the sale at wholesale and retail of storm windows. The parties entered into a partnership dissolution agreement on March 25, 1953 which, among other things, provided that the plaintiff sold to the defendant all his right, title and interest in the partnership assets, which included thirteen dies used for the production and stamping of component parts used in the assembling of storm windows. Two of the thirteen dies are involved in this lawsuit. The dissolution agreement provided: The first party [Sitnick] "shall have the right to use all the dies of Alco Tension Seal Window Co. for the production of component parts of the storm windows and doors in the operation of any future business conducted by the first party." All thirteen dies were in the possession of fabricators. The partnership, while it was in existence, had obtained the parts from the same fabricators in whose possession the dies were.

After the dissolution of the partnership all thirteen of the dies were used to stamp parts ordered by the plaintiff. The plaintiff had requested the fabricator

who had possession of the two dies herein involved, Anson Tool and Die Co. (hereafter referred to as Anson), to make certain changes in one of the dies, which Anson refused to do without the consent of the defendant. The plaintiff tried to pick up the two dies, which were at Anson's shop, for the purpose of having them used at other fabricators. When defendant learned of this he instructed his attorney to advise the plaintiff that the two dies in question could only be used for producing component parts which might be ordered from Anson. The plaintiff thereupon, through his attorney, made a formal demand on the defendant, through his attorney, for the use of the two dies to be given by plaintiff to any fabricator he wished to employ, and further notified the defendant that in the event the plaintiff was not permitted to so take and use the said dies he would have other dies made and would hold the defendant accountable for the cost of making them. Several other demands were made for the dies, but at no time was the plaintiff permitted to remove the dies from the possession of Anson. The plaintiff then had other dies made, one of which varied from the dies. in the possession of Anson. The plaintiff thereupon brought this suit against the defendant setting up the contract and alleging a breach, to which defendant filed a defense, which was replied to by the plaintiff. A counterclaim was filed by the defendant which was answered by the plaintiff. At the trial the court found in favor of the plaintiff on his statement of claim and entered judgment thereon. The court also found in favor of the plaintiff on the counterclaim, but no point is made upon that finding here.

██ ██ The defendant contends that the court in construing the contract must, if possible, ascertain and give effect to the mutual intention of the parties, and since prior to the time the dissolution agreement was entered into the dies had been used only through the

fabricators in whose possession they were, the parties at the time they entered into the contract must have meant by the words "use all the dies" therein contained that the dies could be used by the plaintiff through Anson and could not be removed from Anson's possession for the purpose of having parts made by other fabricators. However, the rule is that where a contract has been reduced to writing, which purports upon its face to be an expression of the whole agreement between the parties, the intention of the parties can only be determined from the language used in the instrument. In other words, the court is bound to determine the intention of the parties within the four corners of the instrument and from the words used therein, and effect must be given to the plain and obvious import of the language so used if unambiguous. Green v. Ashland Sixty-Third State Bank, 346 Ill. 174. Here the agreement was complete and not ambiguous. The ordinary meaning of the word "use" is "to convert to one's service; to avail oneself of; to employ" (Webster's New International Dictionary, 2nd ed.). If the parties had intended that a limitation should be imposed on that meaning, they could have easily so stated. The mere fact that the parties had previously, while acting as a unit, utilized the service of certain fabricators does not require that such practice be read into and become an integral part of the agreement unless such intention was therein clearly expressed.

 The defendant also contends that there was a general custom and usage in the tool and die industry that dies are maintained and kept in the possession of the fabricators who stamp the parts as ordered by the customer, and that in some instances certain dies which are created by the fabricator cannot, on the order of the customer, be removed from his possession by the customer unless the fabricator is paid for the cost of producing the die, plus a reasonable profit.

"The general rule is that a custom or usage which is repugnant to the terms of an express contract is not permitted to operate against it and evidence of such custom or usage is inadmissible, for, while usage may be admissible to explain what is doubtful, it is never admissible to contradict what is plain." El Reno Wholesale Grocery Co. v. Stocking, 293 Ill. 494. In this case, as we pointed out, the contract is not ambiguous; hence a custom or usage, if any such existed, could not change the integrated contract. Besides, the evidence with reference to the custom or usage was that where the fabricator makes the die he has the right to retain it until it is paid for in full and any parts made by the die must be stamped by the fabricator, but where a fabricator holds a die which has been fully paid for, either the owner or anyone with his permission can withdraw the die. The two dies which were in the possession of Anson had been fully paid for. Even if the custom and usage was applicable, here it would not operate to restrict the right of the plaintiff to withdraw the two dies in question from Anson's possession for the purpose of having parts made by other fabricators, and under the disputed clause in the agreement the plaintiff would have the full right to the use of the dies through any fabricator whom he might wish to employ.

■■ The trial court allowed as damages the cost to plaintiff of acquiring the new dies. The defendant contends that the true measure of damages would be such damages as would fairly and reasonably be considered as arising naturally from the breach, and that the cost of acquisition of new dies would not fall within that category. In 25 C.J.S. Damages, sec. 24, it is said:

"As a general rule . . . the damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from

the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof. . . .

"In the application of the rule it is held that the parties will be presumed to have contemplated that the party injured by the breach of the contract would sustain such damages as would fairly and substantially, in the usual course of things, result from such breach, in the light of all the facts known or which should have been known to them . . . .

". . . It is not required that the parties shall have considered the consequences at the time of making the contract, but the consequences must be such as the parties may fairly be supposed to have considered, or at least would have considered as flowing from a breach of the contract if they had then been informed of all the facts."

Here the defendant should have known that the natural and reasonable consequence of his refusal to permit the unrestricted use of the two dies by the plaintiff would be the construction of new dies, and in fact, before there was an irrevocable breach of the agreement, he was so informed by the letter of the plaintiff. Under all the circumstances the court applied the proper rule in determining the damages suffered by the plaintiff.

 At the trial the plaintiff, in order to prove the customary and reasonable value of the dies made for him, introduced receipted bills together with canceled checks used in payment thereof. The rule is that where a receipted bill is introduced it is sufficient prima facie proof that the charges were fair and reasonable. Sunbeam Beverage Co. v. Cunningham, 242 Ill. App. 401; Wicks v. Cuneo-Henneberry Co., 319 Ill. 344; Sears, Roebuck & Co. v. Mears Slayton Lumber Co., 226 Ill. App. 287. The only evidence in the record

with reference to the cost of the original dies is testimony on the part of the plaintiff and the defendant giving widely variant figures as to what was paid four years before for the dies in question. The court could properly take judicial notice that the price of any fabricated metal four years ago differs to a considerable extent from its price today. The defendant did not see fit to offer any evidence from die makers concerning the reasonable price of such dies today. In any case, this question was not properly before the trial court inasmuch as the defendant, after a bill of particulars was filed by order of court stating the cost of the two dies, failed in his defense to raise the issue of the reasonableness of the price. Unless such issue is raised by the pleadings it should not be considered by the court. Sears, Roebuck & Co. v. Mears Slayton Lumber Co., supra.

■ ■ The defendant filed a motion to vacate the judgment based upon newly discovered evidence, which motion was to the effect that one of the dies which was constructed for the plaintiff differed materially from the die owned by defendant and which was used by the parties when they were partners, and because of such difference the cost would be greater than if a similar die had been constructed, and that the plaintiff had approached the die maker seeking to have the original die owned by the defendant altered, which the die maker refused to do without permission. The motion did not attempt to make any showing whatsoever of due diligence, nor is it apparent why such evidence could not have been obtained by the defendant if he had been diligent at the time of the original trial. At the time of the trial defendant was not unaware of the difference in the two dies. On direct examination he testified concerning the difference in the stampings made by the dies, and a witness for the defendant testified concerning the request of the plaintiff made

469

to Anson to change the dies. Defendant's exhibits 1 and 2 were stampings made by the dies, 1 by the new die and 2 by the old. There is testimony by the plaintiff that the change sought to be made by him could have been effectuated by the use of an insert, and that the die would not be changed by such insert since it was removable. Furthermore, there is no testimony in the record that the cost of producing plaintiff's die was increased because of the change. It is not apparent that the facts set out in the petition seeking to overturn the judgment would have added anything material to the evidence originally considered by the trial court. It was merely cumulative. The petition also raised an issue with reference to the reasonableness of the cost of making the dies in question. The objection that the defendant failed to raise such issue in his pleadings could properly have been considered by the trial court in disposing of this motion. In an application for new trial on the ground of newly discovered evidence, "the burden is on the applicant to rebut the presumption that the verdict is correct and the evidence must meet the following requirements: First, it must appear to be of such a conclusive character that it will probably change the result if a new trial is granted; second, it must have been discovered since the trial; third, it must be such as could not have been discovered before the trial by the exercise of due diligence; fourth, it must be material to the issue; and, fifth, it must not be merely cumulative of the evidence offered on the trial." People v. Buzan, 351 Ill. 610.

The judgment of the Municipal Court of Chicago is affirmed.

Judgment affirmed.

ROBSON, P. J. and SCHWARTZ, J., concur.