**Harold Halpern, Plaintiff-Appellee, Cross-Appellant, v. Dale McLaughlin and William B. Heuser, Defendants-Appellants, Cross-Appellees.**

Gen. No. 49,922.

First District, First Division.

November 15, 1965.

L. Louis Karton, of Chicago, for appellants, cross-appellees.

Rosenthal and Schanfield, William P. Rosenthal, Norman L. Rothenbaum, and Henry M. Morris, of Chicago, for appellee, cross-appellant.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a judgment against defendants in a suit for damages arising from a breach of a contract to sell vacant land. Plaintiff has filed a cross-appeal, claiming in his brief that the trial court's assessment of damages of $24,000 is inadequate and that the award should have amounted to $128,000.

The record reveals that defendants, Dale McLaughlin and William B. Heuser, were the beneficial owners, in 1954, of a twenty-two acre tract of land on the southeast corner of Greenwood Avenue and Central Road in Cook County, west of Glenview, Illinois. After discussions and negotiations, they entered into an agreement on January

15, 1955, with the plaintiff and three other parties: Paul A. Wilde, Richard Wilde and Mortimer Klein. These four men were the stockholders of the Mortimer Development Company, a corporation, which dealt in real estate and which held interests in other property in the vicinity of defendants' tract. The agreement provided, in part, for the formation of the Greenwood Gardens Corporation, and apportioned the stock among the six signatories to the agreement. The defendants agreed to convey to the newly-formed corporation this tract of land which the corporation was to subdivide, develop and sell. At the time the agreement was signed, title to the real estate was held by the First National Bank & Trust Company of Evanston as land trustee. It is uncontradicted that all of the parties were aware of this fact. But defendants' interest in the property was also pledged to the Bank to secure their indebtedness to the Bank in the amount of $35,000. The plaintiff denies he was aware of this fact when the agreement was executed, although defendant McLaughlin testified to the contrary.

In any event, paragraph four of the agreement provided that payment to the defendants for the conveyance of this tract was to be by means of the corporation's debenture note in the amount of $50,000. The agreement further provided in paragraph six, that upon the occurrence of certain specified contingencies, the six signatories would personally pay and discharge the note in amounts proportionate to their respective stock holdings. They further agreed "to pledge to the holder from time to time of said note all of the capital stock of the corporation owned by them." The agreement was prepared by John J. Flynn, attorney for the defendants. Flynn was also the attorney for the First National Bank & Trust Company of Evanston.

The corporation was formed in accordance with the agreement and its stock was issued and paid for in the amounts specified. Thereafter, Flynn prepared a docu-

ment which was to serve as the debenture note described in the agreement. The first page and one-half of this document was headed "Debenture Note" and set forth the obligation of the corporation in the amount of $50,000, payable to the order of defendants. Space was provided for the signature of the President of the Corporation (McLaughlin) and for its Secretary (Paul A. Wilde). The provisions of that portion substantially conformed to those set forth in the agreement, but a confession of judgment clause not specified in the agreement was also included.

The remainder of the document, an additional two and one-half pages, was headed "Guarantee" and was followed by a space for the signatures of the six stockholders of the corporation. The text of this segment of the document imposed upon the parties substantially the same personal liability on the note as was imposed upon them by their original agreement.

When this two-part document was submitted by Flynn to the plaintiff, the Wildes, and Klein for their signatures, the first portion bore the signature of McLaughlin, as President of the Corporation, and the guarantee portion had been signed by both McLaughlin and Heuser. Paul A. Wilde then signed the first portion as Secretary of the Corporation, and both of the Wildes signed the guarantee portion. It appears that the guarantee portion was also signed by Klein, although the record is not conclusive on that point. In any case, the plaintiff refused to sign the guarantee portion, and convinced the other three parties that signing a guarantee was not required by the agreement. The guarantee portion was then physically deleted from the note, and the remainder of the note was tendered to Flynn, along with the parties' stock certificates endorsed in blank and a letter signed by Paul A. Wilde and by plaintiff. That letter, dated August 10, 1955, stated that the ". . . guarantee has been physically deleted from said note by reason of the fact

434

that the Agreement of January 15, 1955, calls for no separate guarantee, said guarantee being included as paragraph 6 of said Agreement of January 15, 1955." The letter demanded conveyance of the defendants' tract to the corporation.

It appears that defendants, in order to induce the Bank to convey title to the real estate, were obliged to provide some other acceptable security to the Bank for their $35,000 obligation; and that they intended the debenture note, with attached guarantee, as prepared by Flynn, to constitute such substitute collateral. It is uncontradicted that the defendants offered to convey their land to the corporation once the guarantee on the note was signed by all of the parties. But when plaintiff refused to execute the guarantee and the note was returned with that portion deleted, the defendants apparently were unable to convey title. Flynn, attorney both for defendants and for the Bank, by his letter of August 11, 1955, rejected the tender as insufficient, returned the documents he had received in that tender, declared a default by plaintiff, the Wildes and Klein, and stated that the contract was terminated and null and void.

A derivative action for specific performance was filed on January 25, 1956, by the plaintiff herein and by the Wildes. The action was dismissed by order of the court, and on February 6, 1957, the same three plaintiffs filed, in their own names, an amended complaint seeking damages for breach of contract and naming as defendants McLaughlin and Heuser. The Wildes were dismissed out as plaintiffs by stipulation on November 8, 1957, without prejudice to Harold Halpern, the sole remaining plaintiff. The court, trying the case without a jury, first heard evidence on the issue of liability, and on April 10, 1964, entered an order finding the defendants guilty of breach of contract for their failure to convey. The defendants thereupon moved for leave to file instanter an Amendment to Answer to Amended Complaint and Counter-

claim. The Court denied this motion, and after hearing evidence on the issue of damages awarded $24,000 to the plaintiff by order of June 9, 1964.

The basic issue to be determined is whether the parties were required, by virtue of their agreement, to execute a guarantee as an integral part of the corporation's debenture note. The plaintiff claims that he was not so required, that the documents which were executed and tendered constituted complete performance under the provisions of the agreement, and that defendants breached the contract by thereafter refusing to convey their property. Defendants, on the other hand, contend that the plaintiff was required to execute the guarantee, and that his refusal to do so constituted a breach and justified the defendants' refusal to convey.

Plaintiff contends that in the construction of a complete written contract, as here, this court must determine as a matter of law the intention of the parties from the four corners of the instrument itself. As a general rule this is correct. Sitnick v. Glazer, 11 Ill App2d 462, 138 NE2d 84; Chicago Land Clearance Commission v. Jones, 13 Ill App2d 554, 142 NE2d 800. If the words of a contract are plain and unambiguous the contract must be so construed as to give effect to the plain and obvious import of the language used. Green v. Ashland Sixty-Third State Bank, 346 Ill 174, 178 NE 468.

However, the Supreme Court has also stated that:

> While it is not the province of courts to interpolate new terms into contracts, against the evident intention of the parties, with the view of making such contracts more reasonable, yet, on the other hand, even a strained construction of the language will be adopted for the purpose of preventing obvious injustice. *The intention of the parties, it is true, must govern; but the experience of human affairs teaches courts that this intention is not to be sought merely*

*in the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties and the object they evidently had in view.* (Pocius v. Halvorsen, 30 Ill2d 73, at 78–9; 195 NE2d 137.) (Emphasis ours.)

The language in the Agreement relevant to this appeal is in paragraph 6, which reads in part as follows:

In order to assure McLaughlin and Heuser, and the holders from time to time of the $50,000 Note, of the prompt platting and improvement of said premises, the parties hereto agree that, if zoning and platting is not completed within six (6) months from the date of conveyance to the Corporation, or if within one (1) year after such zoning and platting, plans and specifications for underground improvements are not approved, work commenced thereon and satisfactory arrangements made for completion of such improvements, or if said residential lots are not built on and sold so that said $50,000 Note is paid on or before its maturity, then at the option of the holders of the note the same shall become immediately due and payable and the parties hereto, in the proportion McLaughlin—12½%, Heuser—12½%, Paul A. Wilde—12½%, Richard Wilde—12½%, Mortimer E. Klein—25% and Harold Halpern—25%, agree to immediately pay and discharge said Note. As further security for the payment of said Note, the parties hereto agree to pledge to the holder from time to time of said note all of the capital stock of said Corporation owned by them.

 After a careful examination of the agreement, we have concluded that there exists an ambiguity in the contract as to whether the parties agreed to sign a guarantee as an integral part of the debenture note.

While the word guarantee was not precisely stated in the contract, the intention is apparent that some further document would be drawn to evidence the agreement of the parties to pay the note in case of certain specified circumstances leading to default. The document called "Guarantee" which was eventually prepared conditioned liability of the parties substantially upon the occurrence of the same events as were set forth in the agreement as giving rise to liability. Thus, the defendants could reasonably have believed that the plaintiff was obliged, under the terms of the contract, to sign that guarantee. Indeed, the fact that the Wildes, and perhaps Klein as well, signed the guarantee without objection suggests that perhaps they too believed that they were obliged under the contract to do so.

But, as plaintiff strongly urges, had the parties intended by the agreement to require an individual guarantee they could have clearly stated in paragraph six that they would evidence their obligation to pay and discharge the note by a guarantee to be attached to the debenture note. Paragraph six as actually drafted, however, requires them personally "to immediately pay and discharge said Note" if a default subsequently occurred and the Corporate Debenture Note is not paid on or before its maturity.

 We have concluded that the parties entered into an ambiguous contract, with plaintiff seeing it one way and defendants another, and that the contract may be termed as fairly susceptible to different constructions. Under these circumstances, neither party should be held liable in damages to the other for breach of contract. Stricker v. Umbdenstock, 200 Ill App 20. We are aware of no rule which would, in a case like the present, impose all of the loss upon one of the parties. No reason is perceived, either in law or in equity, why this should be done, and it seems to us that every principle of natural justice forbids it. For that reason and for the reasons

aforementioned, the judgment finding the defendants liable must be reversed.

Judgment reversed.

MURPHY and KLUCZYNSKI, JJ., concur.