CHRYSLER CORPORATION, a Delaware Corporation, Plaintiff-Appellant,

v.

E. SHAVITZ & SONS, a partnership, and Ernest Shavitz, d/b/a E. Shavitz & Sons, Defendants-Appellees.

No. 75–2011.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1976.

Decided June 10, 1976.

Rehearing Denied Aug. 5, 1976.

Stanley A. Walton, III, Chicago, Ill., for plaintiff-appellant.

Erwin H. Greenberg, Chicago, Ill., for defendants-appellees.

Before CLARK, Associate Justice (Retired),* SWYGERT and BAUER, Circuit Judges.

SWYGERT, Circuit Judge.

We are asked to review this diversity suit in which Chrysler Corporation appeals from a judgment against it and in favor of E. Shavitz & Sons, a partnership, and Ernest Shavitz, individually. The question is whether a buyer can recover consequential damages from a seller who breached a sales contract and because of the breach the buyer subsequently suffered loss of good will among his prospective retail customers, resulting in a loss of business. We hold that the buyer may not recover such damages and reverse the judgment below.

Chrysler makes air cooling and air handling equipment. Shavitz is engaged in installing air conditioning and ventilation systems in commercial buildings. In designing the jobs for his customers between 1961 and 1973, Shavitz used Chrysler products except when a customer specified otherwise. Because of the events which gave rise to this lawsuit, Shavitz ceased buying from Chrysler on a regular open-account basis around April 1, 1973.

In 1968 Shavitz installed an air conditioning system in a restaurant owned by Peter

* The Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States, is sitting by designation.

Arvantis. Arvantis was quite satisfied with the job. In February 1971, Shavitz designed an air conditioning and ventilation system for a second restaurant owned by Arvantis known as Homer's Pub. Both orders were given to Chrysler. Delivery of the equipment for the second installation was to be made by April 20, 1971; however, it was actually made on May 20, 1971, and the job was completed on June 2, 1971. Arvantis withheld $2,000 from the amount due Shavitz because of Chrysler's tardy delivery. In the fall of 1974—more than three years after the Homer's Pub installation and a year and one-half after Shavitz had ceased doing business with Chrysler—Shavitz lost an additional restaurant job for Arvantis even though he was the low bidder. Arvantis testified that Shavitz lost his business because "he was dissatisfied at Homer's, because he [Shavitz] promised me he was going to deliver the equipment in 'X' amount of days and then he delayed me over a month so I didn't want to be tied up again. . . . I was dissatisfied with his . . . delivering the equipment."

In April 1972, Shavitz ordered equipment from Chrysler for an air conditioning system in a building occupied by Standard Dental Laboratory. Although delivery was to be made within thirty days, it did not occur until mid-July. The system was unsatisfactory because of the improper sizing of certain pipes furnished by Chrysler. Shavitz tried to make the system work. Subsequently, Standard Dental had two other air conditioning and ventilation jobs. One of these occurred more than two years after the initial Standard Dental-Shavitz contract, and only a few details are available in the record concerning the second job. Lewis Wall, president of Standard Dental, testified that he would not give these additional contracts to Shavitz because he "lost faith and confidence in Mr. Shavitz [and] because the job never worked properly."

In December 1973, Chrysler brought this suit against the defendants seeking to collect $16,335.55 on unpaid invoices. Shavitz filed counterclaims in addition to an answer to the suit. A jury awarded Chrysler dam-

ages on its claim in the net amount of $11,967. It also awarded Shavitz $7,893 on his counterclaims. We have examined the record including the pleadings and the instructions given the jury and are satisfied that the $11,967 verdict against Shavitz represents the amount of the outstanding invoices due and owing Chrysler less certain set-offs. It is also clear that the $7,893 verdict against Chrysler represents profits lost on subsequent nascent sales to Arvantis and Standard Dental that were never consummated. This appeal concerns only the $7,893 judgment against Chrysler.

Chrysler contends that the judgment awarded against it should be reversed because an improper standard was applied. It argues that the damages are tortious in nature, based on the principle of "proximate cause," and have no precedent in the law of contracts.

The relevant provisions of the Illinois Commercial Code are sections 2–714 and 2–715, Ill.Rev.Stat., ch. 26, §§ 2–714, 2–715 (1975), Smith-Hurd Ill.Ann.Stat., ch. 26, §§ 2–714, 2–715. They provide:

> In a proper case any . . . consequential damages under the next section may also be recovered.
>
> \*    \*    \*    \*    \*    \*
>
> (2) Consequential damages resulting from the seller's breach include
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; . . ..

The question is whether Chrysler "had reason to know" either the "general or particular requirements and needs" of Shavitz when the sales-contracts, later breached, were entered into. We are of the view that it did not. Shavitz and Chrysler were not involved in a fixed contract covering a definite period of time; their relationship was on an ad hoc basis. At the time of supplying the equipment for the Arvantis and Standard Dental jobs, Chrysler had no reason to know of any subsequent job opportunities that Shavitz might have with these

two customers. It was not prescient. Nor were there job opportunities pending with these customers at the time Shavitz severed his open-end relationship with Chrysler. Simple logic requires a holding that the instant case does not fall within the meaning of the above statutory provision.

Shavitz argues that because of the breach of the two sales-contracts, Chrysler is liable to him for all damages he sustained that fairly and substantially flow from these breaches including lost profits from collateral transactions. For that proposition, Shavitz cites *Sitnick v. Glazer,* 11 Ill.App.2d 462, 138 N.E.2d 84 (1956). That case, however, does not exactly square with Shavitz's argument. The court quotes Corpus Juris Secundum:

> As a general rule . . . the damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof . . ..

It then held that when a defendant wrongfully refused to let the plaintiff use two manufacturing dies, the plaintiff could recover the cost of his making new ones. The court ruled: "Here the defendant should have known that the natural and reasonable consequence of his refusal to permit the unrestricted use of the two dies by the plaintiff would be the construction of new dies." 11 Ill.App.2d at 468, 138 N.E.2d at 88. As can be seen, the facts there were far different from those in the case at bar.

There seems to be no Illinois case directly on point. Shavitz relies on *Adams v. J. I. Case Co.,* 125 Ill.App.2d 388, 261 N.E.2d 1 (1970), as being particularly relevant. The appeal in that case tested the sufficiency of the claimant's pleadings. The plaintiff operated a bulldozing business. He sought recovery from a manufacturer because of the negligent and dilatory correction of defects in a tractor which he had purchased, claiming that he had lost 810 work hours in jobs that he could not perform. The court

held that his claim for lost profits was proper. In treating section 2–715(2) of the Illinois Commercial Code, the court in pertinent part said:

> The Official Comment further states that the older Common Law rule which made the seller liable for all consequential damages of which he had "reason to know" in advance is followed, modified to require reasonable prevention of loss by cover or otherwise. The Code provision and the Official Comment make it clear that strictures are not to be applied to the plain meaning of the Code by adherence to what the parties may have agreed or contemplated at the time of sale. Rather, each case is to be considered on its merits, touching upon the issue of special circumstances arising in that particular case. In the instant case, it is alleged that the plaintiff's particular needs in his tractor business and his existing contracts were known to the defendants and that plaintiff was relying on their judgment; but notwithstanding this, the defendants were wilfully dilatory or careless and negligent in making the corrections or repairs called for in their warranty. We hold these allegations to be sufficient to show "special circumstances" required by UCC section 2–714(2) and that consequential damages have resulted and may be recovered pursuant to UCC section 2–715(2)(a). 125 Ill.App.2d at 495, 261 N.E.2d at 9.

*Adams* is distinguishable from the instant case. At the time of the tractor purchase and while it was being repaired, the owner claimed that he had "contracted" and "promised" many jobs. Accordingly, the jobs for which the tractor was intended either existed or were on the horizon. Here, at the time of the sales-contracts and breaches, no other jobs existed or were in the offing. A direct relationship existed between the breach of the tractor sale and the consequential loss of jobs. No such relationship existed between the breached sales here and the later lost job opportunities. Thus the consequential damages claimed by Shavitz were totally speculative

and did not arise naturally from the breach itself.

Although Shavitz disavows that his counterclaims involve mere loss of good will, in essence, that is what it boils down to. The Third Circuit in *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205 (3d Cir. 1970), stated the legal conclusion which controls the case here:

> Under Pennsylvania law, a plaintiff may not recover for loss of profits to a business because of customer dissatisfaction or loss of good will.
>
> \*   \*   \*   \*   \*   \*

The kind of damages disapproved in the above cases are distinguishable from loss of profits caused by inability of a plaintiff to use specific property destroyed, damaged or withheld by a defendant's wrong, and profits lost on the particular sale or contract for the performance of which the goods in question were purchased. 422 F.2d at 1225–26.

The court was explicating the law of Pennsylvania, however, we believe the quoted language is what the Illinois courts would hold. We are of the same view with respect to a much older case from the Second Circuit, *Armstrong Rubber Co. v. Griffith*, 43 F.2d 689 (2d Cir. 1930). There the court was dealing with the law of New York. Judge Augustus Hand, writing for the court, said:

> We can hardly doubt that such an uncertain and perilous risk as indemnification against loss through alienation of customers was never contemplated by the plaintiff in this case. Nothing was said about it in the negotiations between the parties, and it seems quite unlikely that it ever should have been intended.
>
> \*   \*   \*   \*   \*   \*

If the plaintiff here can recover for loss of good will, it is difficult to see what limits are to be set to the recovery of such damages in any case where defective goods are sold and the vendee loses customers. Indeed, if such were the holding, damages which the parties never contemplated would seem to be involved in every contract of sale. 43 F.2d at 691.

On the basis of the foregoing analysis, we are convinced that as a matter of law, Shavitz was not entitled to recover on his counterclaims. The judgment in his favor for $7,893 is reversed.