**MANUEL INTERNATIONAL, INC., Plaintiff,**

v.

**M. R. BERLIN COMPANY, INC., Defendant.**

No. 77C4746.

United States District Court, N. D. Illinois, E. D.

Aug. 19, 1981.

Dale Lischer, James B. Muskal, Leydig, Voit, Osann, Mayer & Holt, Chicago, Ill., for plaintiff.

Carol R. Thigpen, Donna Helen Triptow, Jenner & Block, Chicago, Ill., for defendant.

1. Manuel's breach of warranty claim, Count III, was dismissed by Judge Decker in July 1979.

2. Edge oxidation would permit the tinplate sheets to be trimmed to remove the discolored areas, leaving the rest of the sheets as fully usable prime tinplate. Surface oxidation could make entire sheets or large sections of sheets unusable for a number of purposes or simply less valuable, both because of the objectionable

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Manuel International, Inc. ("Manuel") brings this action against M. R. Berlin Company, Inc. ("Berlin") for breach of contract, fraud and unfair competition.[1] Berlin has moved for summary judgment on all aspects of the Complaint. For the reasons stated in this memorandum opinion and order that motion is granted in part and denied in part.

### Facts

On October 15, 1976 Manuel ordered 110 metric tons of tinplate from Bond Brothers International, a division of Berlin. Manuel subsequently resold that tinplate to an Italian company, Sicom, S.P.A. ("Sicom"). Manuel contends that the tinplate it received did not conform to the description in the contract. This has allegedly caused damage in both Manuel's relations with Sicom and Manuel's attempts to sell tinplate in the Italian market.

Both Manuel's claims and Berlin's efforts to defeat them focus on the condition of the tinplate sold and shipped to Manuel by Berlin. Three conditions of tinplate are relevant to this action. Of these the most valuable is prime tinplate with edge oxidation. Of somewhat lower quality and value is prime tinplate with oxidized surface. Lowest of all in worth ("quality" would really be an inapropos characterization) is non-prime or rusted tinplate.[2]

There is no dispute that Berlin's contract with Manuel called for Berlin's sale of "prime tinplate, original mill U. S. Steel packed . . . Oxidized *surface*" (Berlin had rejected Manuel's initial purchase order describing the goods as "prime tinplate, original mill U. S. Steel packed . . . Slight *edge*

yellow discoloration and because the tin oxide can cause poor adhesion of lacquer and lithographing ink and adversely affect solderability. Rusted tinplate reflects corrosion of the steel base or steel-tin couple that underlie the tin coating (tinplate is structurally a sandwich of nine layers with the steel base at the center and the tin closer to the surface), and it may well be saleable only as scrap.

oxidation"). Manuel contends that Berlin breached the contract because it supplied rusted or non-prime tinplate.

For purposes of its motion Berlin has effectively conceded that it sold Manuel non-prime tinplate.[3] Berlin's summary judgment motion rests primarily on the fact that despite Berlin's refusal to describe the tinplate as having only "slight edge oxidation," Manuel in turn contracted to resell the goods to Sicom as prime tinplate with only edge oxidation. Because the sole director of Sicom, Andre Bellini ("Bellini"), testified that he would not have paid the same price for the timplate had he known that it "had an oxidized surface instead of just slight edge oxidation," Berlin contends that any harm suffered by Manuel was self-inflicted.

### Count I—Breach of Contract

Manuel contends that Berlin's shipment of nonconforming tinplate constitutes a breach of contract. Though Berlin urges strenuously that summary judgment in its favor is appropriate, it never denies selling nonconforming tinplate (see n.3). Berlin in essence concedes that it breached the contract but argues that such breach was not the *cause* of any injuries suffered by Manuel. Berlin claims that all of Manuel's injuries are rather the result of its own misdescription of the tinplate sold to Sicom.

But such misdescription to Sicom[4] does not necessarily mean Manuel cannot recover losses suffered in its purchase from Berlin.

Bellini testified that had the tinplate been described as prime with oxidized surface he would not have paid the same price to Manuel. That however is very different from negating any damages resulting from *Berlin*'s earlier misdescription of the same goods.

■ Because Berlin breached its contract with Manuel (conceded for current purposes), it is liable for lost profits and damages caused by that breach. Ill.Rev.Stat. ch. 26, § 2–714. Each side has given an inaccurate portrayal of the situation in that respect. It is instructive to analyze the transaction in terms of figures that have some support in the record. Solely for purposes of discussion we assume the following:[5]

(1) True value of the tinplate in the condition sold by Berlin to Manuel and resold by the latter to Sicom was $9,600 (the figure stated by Berlin's Treasurer in his complaint to the Chessie System).

(2) Manuel paid Berlin about $25,000 because of Berlin's false description of the goods (established).

(3) Sicom paid Manuel about $36,600 because of Manuel's false description of the goods (established).

(4) Because there is no established value for the goods (including Manuel's profit on resale) if they had conformed to Berlin's description, alternative assumptions will be made:

---

3. Indeed one of the items before the Court on Berlin's motion is its Treasurer's letter to its seller, Chessie System, over four months before it resold the tinplate to Manuel, complaining that:

   1. "At least 75 bundles [there were 86 skids in all] were completely rusty and badly dented." This of course flatly contradicts Berlin's later "prime tinplate" representation.

   2. "At least 53 bundles had been restacked and rebanded; not intact...." This squarely contradicts Berlin's subsequent "original mill U. S. Steel packed" representation.

   3. "We were, in fact, delivered scrap worth only about $9,600.00." This too contradicts the "prime tinplate" description.

Those statements might well justify summary judgment for *Manuel* as to liability (leaving aside the question of damages) for both breach of contract and fraudulent misrepresentation, though that issue is not now before the Court.

4. Manuel's President Feingold's deposition testimony seeks to minimize the significance of "slight edge oxidation" as only "marginally different" from "oxidized surface"—a mere difference in semantics. In light of Bellini's testimony to the contrary, this opinion will proceed from the premise that Berlin's assertion of a Manuel misdescription to Sicom is correct.

5. These assumptions are of course not findings of fact. They are only illustrative to demonstrate the operation of the applicable rules of law.

(a) They had no potential value beyond the $25,000 Manuel actually paid Berlin.

(b) They would have been worth $30,000 to a market purchaser, so that Manuel lost $5,000 in resale profit.

(5) Manuel spent $4,000 in investigating and substantiating the condition of the goods.

If assumption 4(a) were correct, UCC § 2–714 would entitle Manuel to a recovery of $19,400 (($25,000 – $9,600) + $4,000). If assumption 4(b) were correct, the recovery would be $24,400. Each conclusion follows because—contrary to Berlin's position—Manuel's damage occurred the moment Berlin lied to it about the tinplate. Manuel will obviously have to work out its own destiny with Sicom, and because the two controversies are being litigated in widely separated forums the results will not necessarily be financially consistent.

It is equally obvious that Manuel cannot recover from Berlin the full spread between $9,600 and the $36,600 price Sicom paid in fact but would not have paid had Manuel described the tinplate accurately. See *St. Joseph Hospital v. Corbetta Construction Co.*, 21 Ill.App.3d 925, 936, 316 N.E.2d 51, 59 (1st Dist. 1974).

What is plain beyond cavil is that Berlin's simplistic assertion based on Manuel's conduct in its resale is flatly wrong. Its motion for summary judgment on Count I's breach of contract claim must be denied.

*Count II—Fraudulent Misrepresentation*

■ Count II concerns the same events as Count I but alleges that Berlin shipped the nonconforming tinplate knowingly and with intent to defraud (see n.3). Berlin's arguments in support of its motion for summary judgment as to Count II must be rejected for the same reasons discussed in the preceding section.

Thus Berlin contends that Manuel's own misrepresentation was the critical factor that caused its harm. But once again the alleged misrepresentation in the subsequent resale is irrelevant. Any defrauded pur-chaser is entitled to recover damages actually caused by the fraud. Summary judgment is therefore denied on Count II as well.

*Count IV—Tortious Interference with Contractual Relationship*

■ To recover for tortious interference with a contractual relationship Manuel must show, *Blockman v. Sandalwood Apartments*, 613 F.2d 169, 171 (7th Cir. 1980):

(1) an existing contract between plaintiff and a third party;

(2) defendant's knowledge of the contract;

(3) defendant's intentional inducement to breach the contract;

(4) subsequent breach by the third party; and

(5) resulting damage to plaintiff.

Manuel's allegations wholly fail to support such a claim.

Berlin contends it was never aware of the existence of a contract between Manuel and Sicom. Its president denies knowledge of the identity of Manuel's customer, and Manuel's President Feingold could not recall whether he informed Berlin of the nature of his resale contract with Sicom. In response Manuel can only point to testimony of Berlin's president in which he concluded that the tinplate sold to Manuel was destined for "an Italian canner." But that general belief is scarcely equivalent to knowledge of the existence of the specific contract with Sicom. Manuel has thus failed to raise a factual dispute sufficient to support its claim of tortious interference with a contractual relationship.

Even were that not the case Manuel's claim must founder on a more basic ground. Both sides recognize that the fourth element of the tort is breach of the contract by the *other* contracting party due to the defendant's wrongful conduct. Yet Manuel points only to its *own* breach of the Sicom contract. There is no charge that *Sicom* breached that contract with Manuel.

Because three of the necessary elements of the Count IV claim are lacking,[6] Berlin is entitled to summary judgment on that Count. As a matter of law there has been no tortious interference with the Berlin-Sicom contractual relationship.

### Count V—Unfair Competition

■ Manuel's charge of unfair competition rests on two allegations:

(1) Berlin disparaged the ability of Manuel to supply prime electrolytic tinplate.

(2) Berlin intentionally supplied Manuel with inferior tinplate destined for the Italian market to "lend credence to defendant's disparagement."

Manuel has however failed to offer any evidence in support of an allegation of disparagement by Berlin.

Bellini testified that he did not have any discussions with Berlin as to the tinplate. In fact the only record evidence bearing on disparagement is Manuel President Feingold's assertion in his deposition that *Bellini* disparaged Manuel's business ability to other Italian customers. There being no factual showing to support Count V's allegations, summary judgment is appropriate as to Manuel's unfair competition claim.

### Damage to Business Reputation

Manuel's prayer for relief includes a claim for:

(c) damage to plaintiff's business reputation and lost profits in the sum of $500,000.00.

That prayer need now be evaluated only in terms of surviving Counts I and II.

Judge Decker's March 22, 1979 opinion denied the prayer as to Count I's breach of contract claim. This Court concurs in his conclusion that our Court of Appeals' exposition of Illinois law compels that result:

■ Manuel is not requesting lost profits in the usual sense, for it has identified no specific customers whose business it lost as a consequence of Berlin's alleged breach. Instead the Complaint's thrust is that Manuel's reputation was harmed when potential Italian customers learned it had supplied Sicom with non-prime tinplate. Such damage to business reputation, or loss of good will, is not recoverable in a breach of contract claim under Illinois law. *Chrysler Corp. v. E. Shavitz & Sons*, 536 F.2d 743 (7th Cir. 1976); *cf.*, *Cates v. Morgan Portable Building Corp.*, 591 F.2d 17, 21 (7th Cir. 1979) (builder's failure to supply motel units led to a calculable loss of customers).

What of Count II's fraudulent misrepresentation claim? As a general rule, 19 I.L.P. Fraud § 15:

To authorize a recovery for fraud and deceit, there must be a relation of cause and effect between the misrepresentations and the damage, and the damage must be the legal and natural consequence of the wrong complained of, proceeding exclusively from that and not from other causes.

In addition courts frequently limit damage recovery in fraud actions because of lack of proof, *Classic Bowl, Inc. v. AMF Pinspotters, Inc.*, 403 F.2d 463, 467 (7th Cir. 1968):

Damages must not be speculative or probable and they must be proved with a reasonable degree of certainty.

Again Manuel has no conventional claim for loss of profits. As the court stated in *ABC Trans National Transport v. Aeronautics Forwarders, Inc.*, 90 Ill.App.3d 817, 834, 46 Ill.Dec. 186, 199, 413 N.E.2d 1299, 1312 (1st Dist. 1980):

Lost profits in a tort action are limited to those damages proximately caused by defendants' wrongful conduct. . . . It is generally stated that a plaintiff must present competent proof of damages from which a reasonable basis of computation can be derived.

That standard has not been met, because Manuel's claimed lost profit is wholly speculative in terms of opportunities existing or on the immediate horizon at the time of the tort. See the comparable pre-UCC decision in *Salaban v. East St. Louis & Interurban*

---

**6.** Given the absence of elements (2) and (4), element (3) must also be missing by definition.

*Water Co.*, 284 Ill.App. 358, 361–62, 1 N.E.2d 731, 733 (4th Dist. 1936).

█ As with the breach of contract count, the claim is thus really one for damage to business reputation. Although the Court has found but one case on the latter point (a case cited by neither counsel), that decision suffices to demonstrate that Illinois permits recovery for such a claim in a fraud action. *Tonchen v. All-Steel Equipment, Inc.*, 13 Ill.App.3d 454, 462, 300 N.E.2d 616, 622 (2d Dist. 1973).[7] Accordingly Manuel's claim can survive if there is evidence sufficient to raise a factual issue.

Berlin points out that in the years following the tinplate sale to Sicom, Manuel's Italian sales have consistently risen. Nonetheless Bellini testified, "I understand that the spread of the news [of the poor quality tinplate] determined a commercial discredit injuring Manuel in this area." Although Bellini later stated that he was unaware of any Italian buyers who had refrained from buying tinplate from Manuel as a result of the incident, the issue remains a factual one barring summary judgment.

Bellini's statement is further corroborated by the affidavit of John Evans:

> Manuel's reputation in the Italian market has been significantly damaged as a result of its reselling the tinplate under the description of "prime" to Sicom in Italy.

Berlin objects strenuously to consideration of the Evans affidavit. Berlin's most significant charge[8] is that Evans lacked a sufficient basis for his assertion.[9] But that objection also deals with the *weight* a fact finder would give to Evans' testimony, not its admissibility. Evans' statement is sufficient to raise a material issue of fact.

Berlin also contends that Evans refused to answer many crucial questions at his deposition concerning the basis of his assertions. For example, Evans refused to disclose the names of people who made derogatory comments about Manuel. This Court agrees with Berlin that such questions were proper discovery and should have been answered. Nonetheless, on the present record the statement in the affidavit may not be ignored.

Accordingly the damage to business reputation claim will not now be stricken as a matter of law. This ruling is of course without prejudice, for if further discovery were to demonstrate that both the Bellini and the Evans statements were merely bald conclusory allegations without any factual underpinning whatever, the Fed.R.Civ.P. 56 test of a *genuine* factual issue might not be met.

### Conclusion

This Court finds that there is no genuine issue as to any material fact as to Counts IV and V, and under Fed.R.Civ.P. 56(c) Berlin is entitled to a judgment as a matter of law on those Counts. Berlin's motion is denied in all other respects.

---

7. *Tonchen* did not contain any discussion of authorities. However it made a distinction between speculative lost profits (which it did *not* permit to be recovered, 300 N.E.2d at 621–22) and damage to reputation (which it *did* rule to be recoverable, 300 N.E.2d at 622). This Court cannot view the distinction made by the Illinois court as accidental—certainly not in a diversity case on which Illinois law controls.

8. It also argues that submission of the affidavit was untimely and that Evans is so biased as to preclude consideration of the affidavit. Both points go to credibility (and therefore weight) rather than admissibility.

9. This opinion discusses only the quoted portion of the Evans affidavit dealing with asserted damage to Manuel's business reputation in the Italian market. Because this Court has not found any of the other sections of the affidavit critical to the current motion, it expresses no opinion on Berlin's objections to those sections.