Gordon E. Adams, Plaintiff-Appellant, v. J. I. Case Company, a Corporation and Jones Farm Supply, a Corporation, Defendants-Appellees.

Gen. No. 11,140.

Fourth District.

July 23, 1970.

James G. Linder, of Georgetown, for appellant.

Gunn, Hickman, Kesler and Jenkins, of Danville (Robert Z. Hickman, of counsel), and Lowenstein and Hubbard, of Danville (Fred L. Hubbard, of counsel), for appellees.

JONES, J.

Plaintiff appeals from an order of the Circuit Court granting defendants' motions to dismiss his Second Amended Complaint.

The case is presented to us upon the pleadings. It appears from plaintiff's Second Amended Complaint that defendant J. I. Case Company, a corporation, is the manufacturer, (and is hereinafter referred to as manufacturer), defendant Jones Farm Supply, a corporation, is the seller (and is hereinafter referred to as dealer), and plaintiff is the purchaser of a crawler loader tractor. Plaintiff's Second Amended Complaint contains five counts, each directed against both defendants and each based upon essentially the same factual allegations. In each count of the complaint the plaintiff uses language that would pertain to breach of express warranty, breach of implied warranty, manufacturer's strict liability and negligent manufacture. One count also alludes to the remedy of restitution. The prayers for relief in the several counts seek both direct and consequential damages. Each of the defendants filed its Motion to Dismiss the Second Amended Complaint. After argument the trial court entered a final order of dismissal of plaintiff's Second Amended Complaint, filing a Memorandum of Opinion which recited that plaintiff had elected to stand on his pleadings requesting involuntary dismissal with prejudice so an appeal would immediately lie. The Memorandum recited:

> "The Second Amended Complaint attempts to recover on a number of legal theories, some inconsistent, some barred by admitted written warranty,

392

some by the provisions of the Uniform Code, and some by operation of law. All are intermingled in numerous counts, none of which conform to the requirements of Section 33, Subsection 2 of the Civil Practice Act. Rather than examine in detail all of the defects of the complaint, the Court will rather indicate substantial merit in most of the points raised in the two Motions to Dismiss.

"The Complaint is therefore subject to dismissal for numerous reasons including duplicity."

■ ■ Defendants' Motions to Dismiss for failure of the complaint to state a cause of action admit all well-pleaded facts and while the Second Amended Complaint is to be construed strictly against plaintiff, it is entitled to all reasonable inferences which can be drawn from the well-pleaded facts. However, defendants' motions do not admit conclusions of law or conclusions of facts unsupported by allegations of specific facts upon which such conclusions rest. Rhodes Pharmacal Co. v. Continental Can Co., 72 Ill App2d 362, 219 NE2d 726. Plaintiff has suffered the ultimate sanction for bad pleading—final dismissal of his complaint. The basis of the trial court's order of dismissal is that plaintiff's Second Amended Complaint is legally insufficient in both form and substance.

■ ■ The complaint was found insufficient in form because of its failure to comply with section 33(2) of the Civil Practice Act (Ill Rev Stats 1967, c 110, § 33(2)) which provides that each separate claim or cause of action upon which a separate recovery might be had shall be stated in a separate count . . . and each count . . . shall be separately pleaded, designated and numbered, and each shall be divided into paragraphs numbered consecutively, each paragraph containing as nearly as may be a separate allegation. It must be conceded that when tested against this requirement of the Civil Prac-

393

tice Act, plaintiff's complaint leaves something to be desired, because it asserts elements of each of several theories of liability in its separate counts. However, before there may be a final dismissal of plaintiff's complaint, consideration must be given to other sections of the Civil Practice Act. Section 4 of the Civil Practice Act provides that the Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties, that the rule that statutes in derogation of the common law must be strictly construed does not apply to the Civil Practice Act or rules made pursuant thereto. Section 33(3) provides that pleadings shall be liberally construed with a view to doing substantial justice between the parties. Section 42(2) provides that no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet. The trend of the cases interpreting the apparent conflict arising between section 33(2) on the one hand with sections 4, 33(3) and 42(2) evidences the intention of courts to follow the requirements for liberal construction and uphold complaints which contain sufficient allegations to inform the defendant of a valid claim under a general class of cases to the end that controversies may be decided on their merits and not because of the adherence to a rigid form of pleading required by a strict interpretation of the Civil Practice Act. In Consolidated Const. Co. v. Great Lakes Plumbing, 90 Ill App2d 196, 234 NE2d 378, the court said:

> "Recent decisions such as Kita v. Young Men's Christian Ass'n of Metropolitan Chicago, 47 Ill App 2d 409, 198 NE2d 174 (1964), and Miller v. Veterans of Foreign Wars of United States, 56 Ill App2d 343, 206 NE2d 316 (1965), have stressed that 'pleadings shall be liberally construed with a view

to doing substantial justice between the parties.' Section 33(3).

"In Kita, the court said (p 425):

'The intent of the Civil Practice Act was to get away from the formality and rigidity of the common-law pleading. In Crosby v. Weil, 382 Ill 538, 548, 48 NE2d 386, 391, the court states that "It is only necessary that the allegations state a cause of action." The court quotes section 42 of the Civil Practice Act and says further:

' ". . . Under the Civil Practice Act, pleadings are to be liberally construed with the view toward doing substantial justice between the parties and no pleading is to be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim. (Frasier v. Finlay, 375 Ill 78.) With the adoption of the Civil Practice Act there has been a definite attempt to abolish the so-called technicalities of common-law pleading. . . ."

'. . . If the courts, by their restrictive interpretation of that Act, again place the rights of the plaintiff and defendant in a legal straitjacket, they are pursuing the path pointed out by Judge Clark. The purpose of the law is to do substantial justice and the courts must exercise restraint in construing a statute which seeks to reach that end.' "

In Fitzgerald v. Van Buskirk, 96 Ill App2d 432, 239 NE2d 330, the court in construing the above sections of the Civil Practice Act stated:

395

"These sections of the Civil Practice Act are designed and intended to permit controversies to be determined according to substantial justice between the parties, and not according to the technicalities or niceties of pleading. Under the Act, the test of the sufficiency of the complaint is whether it informs the defendant of a valid claim under a general class of cases." (Citations.)

In the case of Church v. Adler, 350 Ill App 471, 113 NE2d 327, it is held:

"The Civil Practice Act does not authorize so-called notice pleading as plaintiff contends, nor does it require strict pleading as is urged by defendant. A pleading must contain allegations of fact sufficient to state a cause of action. Burr v. State Bank of St. Charles, 344 Ill App 332; Stenwall v. Bergstrom, 398 Ill 377. Verbosity and looseness of form are to be discouraged and in some cases may render the pleading fatally defective. Whether a cause of action is stated is to be judged with the admonitions of liberal construction and reasonable information in mind and the whole complaint must be considered, not merely disconnected parts. Legal conclusions are to be disregarded. Stenwall v. Bergstrom, supra; Heuer v. Davis, 336 Ill App 224."

Turning to the Second Amended Complaint, we find that the first twelve paragraphs of Count I allege that both manufacturer and dealer are foreign corporations authorized to do business in Illinois; that manufacturer delivered the tractor to dealer for sale to the general public and it was purchased by plaintiff on March 3, 1966, for an installment price of $14,896.75, and that installment payments are current. Further, that plaintiff is an experienced operator and at all times operated the tractor in a careful and prudent manner so as

to protect it and that plaintiff was engaged in a bulldozing business as a general contractor for hire at $12 per hour, which business included performancy of various types of work all of which was known to the defendants. At the time tractor was purchased, plaintiff had many jobs contracted and others promised which would keep him busy with the tractor, which was known by the defendants. Plaintiff had purchased several tractors similar to the one involved from the defendants and had never experienced any serious difficulty with any of them and he completely relied upon the skill and ability of the defendants to produce and service a good satisfactory tractor of the type purchased. The tractor purchased was a defective tractor unable to do the customary work performed by plaintiff which defects were (a) radiator was defective and whenever temperature was over 75 degrees Fahrenheit the tractor would overheat so that it was dangerous to operate and (b) hydraulic system for raising and lowering the bucket was defective and would not hold the bucket up, so that it was dangerous to operate the tractor. These same twelve paragraphs were adopted and alleged in the four succeeding counts of the complaint. After the first twelve paragraphs, Count I continued by alleging that defendants through the use of reasonable care would have discovered the defects prior to the sale, but they failed to exercise reasonable care in the manufacturing of the tractor. Plaintiff called the defects to the attention of defendants on April 19, 1966, but defendants did not correct the defects until July 17, 1967, causing plaintiff to loose 810 work hours while the tractor was in defendant's shop, for which he would have received $12 per hour, for a loss of $9,720, and plaintiff also suffered the loss of many jobs and a loss of reputation because of his inability to perform jobs which he had contracted to do, all because of the defective tractor.

397

Count I prays damages from the defendants in the sum of $9,995 and costs.

Count I of plaintiff's complaint contains incomplete elements of causes of action in implied warranty, strict liability for defective manufacturing and negligence in manufacturing. None of the theories of liability are stated completely. It is not a well-pleaded count and even with the application of rules requiring liberal construction of pleadings, it cannot fairly be said that defendants are informed of a valid claim under a general class of cases. We conclude that defendants' motions to dismiss Count I were properly allowed.

Count II of the Second Amended Complaint adopts and realleges the first twelve paragraphs of Count I as the first twelve paragraphs of Count II. Then follow allegations that defendants sold the tractor with a written warranty, which is set forth verbatim, and that under the terms of the warranty defendants were under a duty to correct the tractor within a reasonable time whenever it was in the shop for work, but they were wilfully dilatory in making the needed repairs, often letting said tractor "set" (sic) for weeks at a time without working on it. Further, that defendants carelessly and negligently worked on the tractor making many changes and alterations that were not needed or required and which did not correct its defective performance; that the defects in the tractor should have been corrected by defendants within a week's time, but instead, they kept the tractor for 810 working hours, thereby causing plaintiff to lose all that time, plus loss of jobs and reputation. Count II concludes with a prayer for damages in the amount of $9,995 and costs.

The written warranty provides that it is the warranty of both the manufacturer and the dealer and binds them to repair or replace defective parts for a period of twelve months after delivery. It also provides ". . .

In no event shall Dealer or Company be liable for consequential damage of any kind or nature . . ." and that ". . . This warranty is in lieu of all other warranties and conditions, express, implied, or statutory, and all other obligations or liabilities on the part of the Dealer and Company. No representative of the company has authority to change the terms of this Warranty in any manner whatsoever. . . ." The reverse side of the warranty card was signed by the plaintiff under this language: "The undersigned agree to the terms and conditions of the Warranty as set forth on the reverse side hereof."

Defendants' motions attack Count II upon the grounds that it is duplicitous, that it is insufficient in law because the written warranty expressly provides that neither dealer nor company will be liable for consequential damage of any kind or nature, and that the action is barred by the written warranty which declares it is in lieu of all other warranties and conditions, express, implied or statutory.

■■■ In view of the liberal construction to be accorded pleadings we do not view the duplicity of Count II as being fatal. As stated in Savoie v. Town of Bourbonnais, 339 Ill App 551, 90 NE2d 645:

> "The alleged formal deficiencies of the complaint, urged by defendants, to the effect that numerous causes of action were pleaded in the same count in violation of the Civil Practice Act (ch 110, par 157, § 33, subpar (2), Ill Rev Stats [Jones Ill Stats Ann 104.033, subpar (2)]), are without merit, inasmuch as the various breaches of duty alleged by plaintiff were based upon the same set of facts, and could be properly treated as a single cause of action, and set forth in the same count."

Duplicitous pleading, though not in conformity with section 33(2) of the Civil Practice Act, has also been tol-

■■■■■■■■■■■■■
■■■■■■■■

erated in Nepil v. Zeman, 321 Ill App 308, 52 NE2d 836.

The question of duplicity aside, the substantive allegations of Count II are that a breach of the written warranty has occurred and in compliance with the warranty, the requisite repairs have been made. The crux is, however, that defendants were under a duty to make timely repairs called for by their warranty but the defendants took an inordinate amount of time in making the repairs, that they were wilfully dilatory or were careless and negligent in their work of compliance, with the result that plaintiff has suffered direct and consequential damage. Otherwise stated, having agreed to repair or replace the defective parts of the tractor, there arose an implied warranty that the manufacturer and dealer would correct the defects within a reasonable time, but because they were wilfully dilatory or negligent, they did not do so.

May an implied warranty be found and may consequential damages be sought despite the fact that the written warranty given at the time of sale provides it is in lieu of all other warranties, express, implied, or statutory, limits liability to that of repairs or replacement of defective parts, and negates liability for consequential damages? Defendants vigorously argue the negative of the proposition. They point out that plaintiff agreed to the terms and conditions of that warranty and placed his signature upon it to evidence the fact. They also point out that this case is governed by the Uniform Commercial Code; pertinent provisions of which authorize the restrictive provisions of warranty. They cite section 2–316 of the Uniform Commercial Code (c 26, § 2–316, Ill Rev Stats 1967) which authorizes exclusion or modification of warranties. Subsection (1) of that section provides:

"(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (section 2–202) negation or limitation is inoperative to the extent that such construction is unreasonable."

Section (2) of that section reads as follows:

"(2) Subject to subsection (3), to exclude/or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient ·if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

And subsection (4) of that same section provides:

"(4) Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (sections 2–718 and 2–719)."

They also cite section 2–719(a) and (b) which provides:

"(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods

401

and repayment of the price or to repair and replacement of nonconforming goods or parts;"

and

"(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy."

██ ██ When tested by these Uniform Commercial Code criteria, the restrictive warranty is indeed authorized and proper. The plaintiff-buyer accepted the tractor with the knowledge that the manufacturer and dealer had limited their liability to repair or replacement, as they may properly do under the above sections of the Code so long as that limitation is not unreasonable. Plaintiff does not plead any coercive, fraudulent, overreaching or unconscionable sales tactics, so presumably the original limitation of liability was not unreasonable and from all that appears, the plaintiff made his purchase with full knowledge of the limitations. But plaintiff could not have made his bargain and purchase with knowledge that defendants would be unreasonable, or, in the words of his complaint, wilfully dilatory or careless and negligent in making good their warranty in the event of its breach. The manufacturer and the dealer have agreed in their warranty to repair or replace defective parts while also limiting their liability to that extent. Had they reasonably complied with their agreement contained in the warranty, they would be in a position to claim the benefits of their stated limited liability and to restrict plaintiff to his stated remedy. The limitations of remedy and of liability are not separable from the obligations of the warranty. Repudiation of the obligations of the warranty destroys its benefits. The complaint alleges facts that would constitute a repudiation by the defendants of their obligations under the warranty, that repudiation consisting of their wilful fail-

ure or their careless and negligent compliance. It should be obvious that they cannot at once repudiate their obligation under their warranty and assert its provisions beneficial to them. Thus, the allegations of Count II of plaintiff's complaint invoke other provisions of the Uniform Commercial Code. Section 2–719(2) provides:

> "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act."

Failure of the exclusive remedy provided in the warranty is readily found in the allegation that defendants were wilfully dilatory or careless and negligent in complying with their obligations under the warranty. In considering the issue those allegations stand admitted by defendants' motions.

██ ██ Provisions of the Code providing plaintiff's remedy are readily found. Section 2–314 deals with Implied Warranty; Merchantability; Usage of Trade. Subsection (3) of that section provides:

> "Unless excluded or modified (section 2–316) other implied warranties may arise from course of dealing or usage of trade."

The Official Comment on this section states that it is to make explicit that usage of trade and course of dealing can create warranties and that they are implied rather than express warranties and thus subject to exclusion or modification under UCC section 2–316. It is clear that an implied warranty for reasonably prompt and timely repairs upon breach of the express warranty may arise under this Code section. Though excluded by the written warranty as authorized in UCC section 2–316, defendants repudiation for failure to reasonably comply avoids the exclusion. The allegations of Count II that the parties had prior dealings, that the defendants knew plaintiff's business and knew of his contracts

403

for work, and the further allegation that the repair work should take only one week are sufficient, if proven, to give rise to the implied warranty.

■ ■ As to the measure of damages to which plaintiff is entitled, UCC section 2–714(2) and (3) of the Code provides:

> "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

> "(3) In a proper case any incidental and consequential damages under the next section may also be recovered."

Plaintiff has prayed consequential damages. They may be recovered under the above section only if special circumstances show proximate damages of a definite amount. UCC section 2–715(2), relating to buyers incidental and consequential damages, provides:

> "Consequential damages resulting from the seller's breach include

>> "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. . . ."

The defendants call attention to the case of Keystone Diesel Engine Co. v. Irwin, 411 Pa 222, 191 A2d 376, in which it was held that the "special circumstances" were the communication to the seller at the time of entering into the contract of sufficient facts to make it apparent that the subsequently claimed loss of profits

was within the reasonable contemplation of the parties. The court remarked' that the buyer had alleged no facts which would make the seller aware that the buyer intended to hold him responsible for any loss of profits resulting from inability to use the engine there involved. Our attention is also called to Flug v. Craft Mfg. Co., 3 Ill App2d 56, 120 NE2d 666 (1954), a case decided prior to the adoption of the Uniform Commercial Code in which it was stated:

> "Before loss of profits can be used as a measure of damages, the contract should expressly or by implication from its terms contemplate such damages; the defaulting party must fairly be presumed to have understood the extent of his liability for loss of profits and to have assented thereto; and the loss of profits when used as a measure of damages should be fairly compensatory to the vendee and not unjust to the vendor. In the instant case, the only reference to any contract which might involve a loss of profits is the notation on the order which showed that the dies were being made in connection with governmental work. That is clearly not enough to establish that thereby it was expressly or by implication agreed that damages for loss of profits was in contemplation."

Other Illinois cases, notably, Phelan v. Andrews, 52 Ill 486; and Fruehauf Trailer Co. v. Lydick, 325 Ill App 28, 50 NE2d 551, hold that damages for loss of time of use of equipment arising from seller's breach may be recovered and there is no requirement that liability for such loss be contemplated by the parties at the time of the contract. In their Official Comment upon UCC section 2–715(2), its framers make it clear that the "tacit agreement" test for the recovery of consequential damages is rejected. The language of that section

should not be so narrowly construed as to require a prior understanding or agreement that the seller would be bound for consequential damages in the event of his breach. If that is the holding of the Keystone and Flug cases it must be rejected. The Official Comment further states that the older Common-Law rule which made the seller liable for all consequential damages of which he had "reason to know" in advance is followed, modified to require reasonable prevention of loss by cover or otherwise. The Code provision and the Official Comment make it clear that strictures are not to be applied to the plain meaning of the Code by adherence to what the parties may have agreed or contemplated at the time of sale. Rather, each case is to be considered on its merits, touching upon the issue of special circumstances arising in that particular case. In the instant case, it is alleged that the plaintiff's particular needs in his tractor business and his existing contracts were known to the defendants and that plaintiff was relying on their judgment; but notwithstanding this, the defendants were wilfully dilatory or careless and negligent in making the corrections or repairs called for in their warranty. We hold these allegations to be sufficient to show "special circumstances" required by UCC section 2–714(2) and that consequential damages have resulted and may be recovered pursuant to UCC section 2–715(2) (a).

We conclude that Count II of plaintiff's complaint states a cause of action and defendants' motions to dismiss were not well taken and should have been denied.

Count III of the Second Amended Complaint adopts and realleges paragraphs 1 through 12 of Count I. It then alleges that the defendants by printed pamphlets, circulars, advertisements and oral statements expressly warranted the tractor to be a good sound tractor in satisfactory mechanical condition, able to perform the work

for which they knew plaintiff would use it; that plaintiff relied upon defendants' skill and reputation and their aforesaid express warranty. It then realleges, in identical language, defects already alleged in the first twelve paragraphs. Further, that the defects were called to the attention of the defendant on April 19, 1966, but corrections were not made within a reasonable time and, in fact, not until July 17, 1967; that the defendant's failure to correct the defects within a reasonable time was due to (a) the tractor would sit for days in defendant's shop without their attempting to work on it; (b) defendants were carelessly negligent and untrained in making changes and often made changes that did not help; and (c) negligently and unreasonably ordered plaintiff to operate the tractor on an extremely hot day over his protest that the tractor was boiling and dangerous to operate so that they could make tests, which operating injured the motor so that the plaintiff was forced to have it overhauled at his own expense. It is further alleged that because of defendants' conduct, the plaintiff lost 810 work hours at $12 per hour and was forced to have the tractor overhauled at a cost of $598.37, and suffered the loss of jobs and loss of reputation. Count III prays damages in the amount of $9,995 plus costs.

Defendants' motions attacked Count III on substantially the same grounds raised against Count II. The only real difference between the allegations of Count II and Count III is that of the origin of the express warranty. In Count II the warranty was written and given plaintiff at the time of sale. In Count III it is contained in pamphlets, circulars, advertisements and oral statements. While the prayer for damages in both counts is for $9,995, Count III places in issue an item of $598.37 for an overhaul alleged to have been required as the result of defendants negligently and unreasonably requir-

ing plaintiff to operate the tractor on an extremely hot day, resulting in damage to it.

■ Our holding and reasoning in Count III would be the same as that for Count II. Although it is essentially the same cause of action, it should be allowed to stand to afford plaintiff the opportunity of attempting to prove damages resulting from the enforced overhaul of the tractor.

Count IV of the Second Amended Complaint adopts and realleges paragraphs 1 through 12 of Count I. It then alleges the tractor was sold with an implied warranty that the tractor was a good, satisfactory tractor capable of doing the work for which it was sold, but was, in fact, defective and not corrected by defendants until July 17, 1967, thereby causing plaintiff to suffer loss of 810 work hours at $12 per hour, plus loss of business and reputation. The prayer for relief asks damages in the amount of $9,995 plus costs.

■ Defendants' motions to dismiss this count were properly granted. The implied warranty pleaded here is expressly barred by the written warranty furnished plaintiff at the sale. There are no allegations of facts or circumstances in Count IV to remove it from the limitations set forth in the warranty.

Count V of the Second Amended Complaint adopts and realleges paragraphs 1 through 12 of Count I. It then alleges that after plaintiff had given defendants a reasonable time to correct the defective tractor, he returned it and demanded another tractor or his money, but defendants refused; that the defendants refusal to give plaintiff a new tractor or refund his money so he could have purchased another tractor elsewhere caused plaintiff to lose 810 hours of work at $12 per hour, plus the loss of other jobs and loss of reputation.

As in the case with Count IV, the cause of action sought to be alleged in Count V is barred by the writ-

ten warranty and there are no allegations of facts or circumstances to remove it from the limitations set forth in the warranty. Defendants' motions to dismiss Count V were properly granted.

The order of the trial court dismissing Counts I, IV and V of plaintiff's Second Amended Complaint is affirmed. The order dismissing Counts II and III of plaintiff's Second Amended Complaint is reversed and the cause is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.

CRAVEN, P. J. and TRAPP, J., concur.