**In the Matter of FEDER LITHO–
GRAPHIC SERVICES,
INC., Debtor.**

**ROCKWELL INTERNATIONAL COR-
PORATION, et al., Plaintiffs and
Counter-Defendants,**

**v.**

**FEDER LITHO–GRAPHIC SERVICES,
INC., Defendant and Counter-Plaintiff.**

**Bankruptcy No. 80–07343–B.
Adv. No. 81–0853–B.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

June 27, 1984.

John W. Callahan, P.C. by Gerald K. Flagg, Farmington Hills, Mich., for Feder Litho-Graphic Services, Inc.

Miller, Canfield, Paddock & Stone by Michael W. Hartmann, Detroit, Mich., for Rockwell Intern. Corp.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

On March 16, 1978, Rockwell International Corporation (Rockwell) entered into a contract to sell a Miehle Roland Four Color Offset Press to Feder Litho-Graphic Services, Inc. (debtor) for $381,970.[1] Feder Litho-Graphic Services made a down payment of $50,000, and granted Rockwell a security interest to secure the payment of the balance due under the contract. The contract provided for some warranties and excluded others. The warranties and exclusions were as follows:

> WARRANTY: Seller warrants for a period of twelve (12) months from date of initial shipment that new Machinery erected under Seller's supervision is free from defects in material and workmanship at the date of shipment.

> THERE IS NO WARRANTY OF MERCHANTABILITY. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF. THERE ARE NO WARRANTIES EXPRESS OR IMPLIED OR ANY AFFIRMATION OF FACT OR REPRESENTATION EXCEPT AS SET FORTH HEREIN.

> REMEDY: Seller's sole responsibility and liability and Purchaser's exclusive remedy under this agreement shall be limited to the repair or replacement at Seller's option, of part or parts, not so conforming to the warranty....

> DAMAGES: In no event shall Seller be liable for damages of any nature, including incidental, consequential damages, including but not limited to any damages resulting from nonconformity, defect in material or workmanship, services provided or delay of shipment for whatever reason.

On December 22, 1980, Feder Litho-Graphic Services, Inc. filed a chapter 11 proceeding. At the time of the filing of the petition in bankruptcy, the debtor was in default on the payments required under the purchase agreement. Rockwell, accordingly, moved to have the stay vacated to permit it to recover the press, which secured its obligation. Feder counterclaimed, alleging that Rockwell breached its repair warranty and, therefore, the debtor was entitled to recover damages for such breach and additionally to recover consequential damages for lost profits resulting from the breach.[2]

Rockwell denies that it failed to repair the machine, but contends that even if the repair warranty was breached, such breach would not reinstate the consequential damage remedy. To facilitate the progress of the case and in the interest of economy, the parties agreed to submit prior to trial the question whether an exclusion of consequential damages clause survives if a limited remedy fails of its essential purpose. In deciding the preliminary question submitted, the court will assume that the limited repair remedy was breached but that the failure to repair was not willful—that the failure was due to Rockwell's inability to satisfactorily repair the machine.

■ Initially it is necessary to decide whether Michigan or Illinois law governs the construction of the contract. Subject to certain conditions, the Uniform Commercial Code, adopted in both Illinois and Michigan, permits parties to a contract covered by the Code to designate the law to govern the rights and duties expressed in the agreement. U.C.C. § 1–105(1).[3] The con-

---

1. Rockwell entered into the contract with David Feder individually. Thereafter, the business was incorporated.

2. The case was converted to Chapter 7 on August 23, 1982, and the press was sold pursuant to court order for $315,000.

3. Section 1–105(1) of the UCC reads in pertinent part: "[W]hen a transaction bears a reasonable

tract provided that the "agreement shall be governed by the laws of the state of Illinois." The debtor apparently concedes the applicability of Illinois law, but contends that Illinois law governs the construction of the contract only and that the law of the forum, Michigan law, applies with respect to remedies. This argument is totally without merit. No provision of the UCC requires such bifurcation. *Frankel v. Allied Mills, Inc.*, 369 Ill. 578, 17 N.E.2d 570 (1938), relied upon by the debtor, is clearly inapplicable. The case dealt with the construction of a brokerage contract. Section 1–105(1) of the Uniform Commercial Code was not involved. Moreover the parties to the brokerage contract did not agree that the law of any designated state was to apply. Accordingly, the contract is to be construed by reference to Illinois law.

The basic provisions of Illinois' UCC governing the merits of this controversy are not in dispute.[4] The debtor and Rockwell agree that parties to a contract of sale may "limit or alter the measure of damages recoverable," § 2–719(1)(a), and that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable," § 2–719(3). Nor is there any question that if the exclusion of consequential damages is unconscionable the court may disregard the exclusionary clause. § 2–302(1). Finally the parties recognize that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act." § 2–719(2).

The debtor does not contend that the exclusion of consequential damages was unconscionable when the contract was negotiated. The debtor's sole contention is that since Rockwell failed to repair the

press, the limited remedy of repair failed of "its essential purpose" and, therefore, by virtue of section 2–719(2), it may recover not only damages for breach of the warranty to repair[5] but may also recover consequential damages despite the contract provision excluding such recovery.

■ The debtor's argument is simplistic, isolates section 2–719(2) to the exclusion of other related provisions, and is contrary to existing construction of Illinois law. Courts applying Illinois law have consistently held that the failure of a limited remedy to repair does not automatically nullify a contractual provision excluding consequential damages as a remedy. *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir.1978); *see also V–M Corp. v. Bernard Distributing Co.*, 447 F.2d 864 (7th Cir.1971); *J.D. Pavlak, Ltd. v. William Davies Co.*, 40 Ill. App.3d 1, 351 N.E.2d 243 (1976). Courts applying the law of other states have reached the same result. *See Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081 (3rd Cir.1980); *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363 (9th Cir.1978); *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, 323 F.Supp. 1300 (D.S.D.N.Y.1970), *aff'd*, 444 F.2d 372 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 (1971).[6]

■ These holdings harmonize the statutory provisions that relate to this controversy. The Code was intended to encourage and facilitate the allocation of risks associated with the sale of goods. "By limiting the warranties available and the remedies under the warranties, parties are able to provide a consensual allocation of risks in accordance with sound business

relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." U.C.C. § 1–105(1).

4. Actually, the UCC of every state has essentially the same provisions. However, not all states have reached the same result as to the construction to be given these provisions.

5. The measure of damages for breach of warranty to repair is the difference between "the value of the goods accepted and the value they would have had if they had been as warranted." § 2–714(2).

6. For an analysis of the cases dealing with this issue, *see* Eddy, *On Essential Purposes of Limited Remedies: The Metaphysics of UCC Section 2–719(2)*, 65 Calif.L.Rev. 28 (1977).

practices." *AES Technology Systems Inc.*, 583 F.2d at 939. Courts, therefore, absent circumstances that warrant their intrusion, ought not to "rewrite contracts by ignoring parties' intent; rather, [they should] interpret the existing contract as fairly as possible when all events did not occur as planned." *Id.* at 941. "The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. The Code, moreover, tests each by a different standard. The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable." *Chatlos Systems, Inc.*, 635 F.2d at 1086 (citations omitted). No reason exists, therefore, to hold, "as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages. The two are not mutually exclusive." *Id.* Whether the preclusion of consequential damages as a remedy is to be nullified when a limited warranty fails "depends upon the circumstances involved." *Id.* Essentially, the question "narrows to the unconscionability of the buyer retaining the risk of consequential damages upon the failure of the essential purpose of the exclusive repair remedy." *Id.* at 1087. *See also Adams v. J.I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1 (1970). Absent the presence of factors that make the exclusion of consequential damages unconscionable at the inception of the contract or in its performance, the buyer's recovery for the breach of a warranty to repair is limited to the damages flowing from the breach of such warranty.

The cases construing Illinois law relied upon by the debtor *Adams v. J.I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1 (1970); *Custom Automated Machinery v. Penda Corp.*, 537 F.Supp. 77 (D.N.D.Ill.1982); *KKO, Inc. v. Honeywell, Inc.*, 517 F.Supp. 892 (D.N.D.Ill.1981), do not support the debtor's position. In *Adams*, the court did refuse to give effect to the contract provision excluding consequential damages when the warranty to repair clause was breached, but did so only because the complaint alleged facts "that would constitute a repudiation by the defendants of their obligations under the warranty, that repudiation consisting of their wilful failure or their careless and negligent compliance." 261 N.E.2d at 7–8. The court made it clear that had the sellers "reasonably complied with their agreement contained in the warranty they would be in a position to claim the benefits of their stated limited liability and to restrict plaintiff to his stated remedy." *Id.* at 7.

The contract in *Penda* did not expressly exclude consequential damages. Therefore, the court had no reason to, and did not, address the question presented here.

*Honeywell* also offers no aid to the debtor. *Honeywell* does not hold, as the debtor maintains, that the breach of a limited warranty automatically entitles a buyer of goods to recover consequential damages when the contract specifically excludes such damages. *Honeywell* merely holds, as this court now holds, that, although consequential damages are not automatically recoverable, "factual circumstances may permit an award of consequential damages where a remedy has failed its essential purpose, notwithstanding an exclusion clause." 517 F.Supp. at 898. *See AES Technology Systems, Inc.; Adams.*

No purpose would be served by comment on the remainder of the cases, such as *Fargo Machine & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364 (D.E.D. Mich.1977); *Beal v. General Motors Corp.*, 354 F.Supp. 423 (D.Del.1973), since they do not involve Illinois law.

An Order consistent with this opinion has been previously entered.