**Jeary K. SMITH, Plaintiff,**

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION CORP., Navistar Financial Corp. and J. Merle Jones & Sons, Inc., Defendants.**

**No. 87 C 4092.**

United States District Court, N.D. Illinois, E.D.

Jan. 27, 1989.

---

David Bikoff, Indianapolis, Ind., Fred R. Harbecke, Chicago, Ill., for plaintiff.

Hal Morris, Arnstein Gluck Lehr & Milligna, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Jeary K. Smith brings this action charging the Navistar International Transportation Corp. ("Navistar"), Navistar Financial Corp. ("Navistar Financial") and J. Merle Jones & Sons, Inc. ("Jones") with breach of warranty on a Navistar truck purchased from Jones and financed by Navistar Financial. In a counterclaim, Navistar Financial charges Smith with breach of the installment contract. Defendants have moved for summary judgment on Smith's claims, and Navistar Financial has moved for summary judgment on its counterclaim. For the reasons set forth below, the motion for judgment on Smith's claims is granted in part, and the motion on the counterclaim is denied.

### Factual Background [1]

At all times pertinent to this action, Smith, an Indiana citizen, was an independent owner-operator of long distance highway trucks. In late 1984, Smith decided to purchase a new truck. He visited various truck dealers, including Jones, to discuss whether their trucks had certain options and met certain specifications. On November 7, 1984, Smith purchased a Navistar Model F–9370 semi-tractor truck from Jones. To execute the sale, Smith signed a Retail Order which contained the following warranty:

1. Unless noted otherwise, the following facts are

International Harvester Company's [now Navistar] Promise to You. We promise to you, the first user purchaser, that we will replace or repair any part or parts of your new International motor vehicle which are defective in material or workmanship without charge for either parts or labor during the first year or 12,000 miles of operation, whichever occurs first.

\*  \*  \*  \*  \*  \*

What You Must Do. We recommend that you bring the vehicle back to the dealership where you purchased it; however, if you are in transit or have moved, take it to the most convenient authorized International Truck Dealer.

\*  \*  \*  \*  \*  \*

THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, ALL OTHER REPRESENTATIONS TO THE FIRST USER PURCHASER, AND ALL OTHER OBLIGATIONS OR LIABILITIES, INCLUDING LIABILITY FOR INCIDENTAL AND CONSEQUENTIAL DAMAGES ON THE PART OF THE COMPANY OR THE SELLER.

Smith also signed an installment contract with Navistar Financial, obligating him to pay sixty monthly installments of $1,595.34. That contract contained a provision disclaiming any warranties on the truck beyond those offered by the manufacturer.

Upon delivery of the truck, Navistar gave Smith an owner's manual which provided in pertinent part:

International Harvester will repair or replace any part of this vehicle which proves defective in material and/or workmanship in normal use and service, with new or ReNEWed parts, for the first 12 months from new vehicle delivery date or for 50,000 miles (90,000 Km), whichever occurs first, except as specified under "What is Not Covered."

material and undisputed.

Like the Retail Order, the owner's manual stated that Navistar disclaims any warranties of merchantability and fitness for a particular purpose and any liability for incidental and consequential damages.

As early as nine days after he purchased the truck, Smith began to experience problems with it. On at least ten separate occasions between the purchase date and April 1985, Smith brought the truck to Speedway International Trucks, Inc. and other authorized Navistar dealers for repairs. The dealers held the truck for a total of forty-five days during this period. Smith also complained orally and in writing to various employees of Navistar, Navistar Financial and Jones as well as a state consumer affairs agency. Smith contends, and defendants dispute, that some of the defects that formed the basis of his complaints were never fully resolved. Despite these defects, Smith continued to use the truck, eventually amassing 48,488 miles in it. After the final repair effort, Smith still remained dissatisfied with the truck's performance, and on June 6, 1985, sent a letter to the three defendants expressing his intention to revoke acceptance of the truck. He also ceased paying installments on the truck.

On May 4, 1987, Smith filed this action. In Count I, he charges Jones and Navistar with breach of the express and implied warranties of merchantability and fitness for its intended use and seeks compensation for the difference in value between the vehicle as delivered and as warranted and incidental and consequential damages for loss of business income and good will. In Count II, Smith charges Jones with breach of contract and seeks cancellation of the contract, sale of the truck and damages. In its counterclaim, Navistar Financial charges Smith with defaulting on the installment contract and seeks possession of the truck as well as damages for the unpaid installments, delinquency charges and collection costs. Defendants move for summary judgment on all claims, and Navistar Financial moves for summary judgment in its counterclaim.

Summary Judgment on Smith's Claims

■ In their motion for summary judgment, defendants contend that under the undisputed facts they are not liable under the warranty and, in any event, Smith cannot recover for incidental and consequential damages. We can quickly dispense with their motion for summary judgment as to liability. Smith concedes for purposes of this motion that the disclaimers of liability for breaches of implied warranties of merchantability and fitness are valid and enforceable under the Uniform Commercial Code.[2] However, Smith presents through affidavit and the revocation letter evidence supporting a finding that Navistar breached the express "repair and replace" warranty by failing to rectify various defects and by holding the truck for a total of forty-five days to repair other defects. With this evidence, Smith has identified a factual dispute going to defendants' liability under the express warranty and thereby withstands summary judgment as to liability. Fed.R.Civ.P. 56(e). *Joslyn Corp. v. RTE Corp.*, 684 F.Supp. 967, 969 (N.D.Ill. 1988).

■ Defendants alternatively move for summary judgment as to the damages Smith may recover should he prove breach of the warranty. Ordinarily Smith's effective waiver in the contract of any right to recover incidental and consequential damages would preclude such recovery here. However, the U.C.C. provides that "[w]here circumstances cause an exclusive

---

**2.** The pertinent provisions of the U.C.C. state: To exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous. Ill.Rev.Stat. ch. 26, § 2–316(2).
[An exclusion is] conspicuous ... when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals ... is conspicuous. Language in the body of a form is "conspicuous" if it is in large or other contrasting type or color. Ill.Rev.Stat. ch. 26, § 1–201(10).
The disclaimers in the Retail Order and owner's manual were printed in large contrasting type.

or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." Ill.Rev.Stat. ch. 26, ¶ 2–719(2). Thus, if a buyer proves that the seller breached an express warranty, the buyer may seek additional relief for breach of an implied warranty of fitness for a particular purpose even if the seller expressly disclaimed that warranty. Some courts have expanded buyers' remedies further, holding that a buyer may additionally seek damages otherwise excluded by the contract. In *Adams v. J.I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1 (4th Dist.1970), the Illinois appellate court held that the seller's breach of a limited warranty to repair and replace automatically exposes the seller to liability for the buyer's consequential damages despite an otherwise enforceable disclaimer:

> The limitations of remedy and of liability are not separable from the obligations of the warranty. Repudiation of the obligations of the warranty destroys its benefits.... It should be obvious that they cannot at once repudiate their obligation under the warranty and assert its provisions beneficial to them. *Id.*, 261 N.E.2d at 7–8.

*See also Fidelity and Deposit Co. v. Krebs Engineers*, 859 F.2d 501 (7th Cir.1988) (interpreting Wisconsin law).

■ The Seventh Circuit has refused to adopt this categorical approach, instead undertaking a fact-specific case-by-case inquiry. *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir. 1978), the Seventh Circuit affirmed the district court's finding that the defendant was liable for breach of warranty on a laser but remanded for a redetermination of damages excluding consequential damages. The court refused to automatically sever a consequential damages disclaimer from the contract merely on the failure of a warranty's essential purpose:

> [W]e reject the contention that failure of the essential purpose of the limited remedy automatically means that a damage award will include consequential damages. An analysis to determine whether consequential damages are warranted must carefully examine the individual factual situation including the type of goods involved, the parties and the precise nature and purpose of the contract. *Id.* at 941.

The court nevertheless enforced the consequential damages disclaimer in that decision on extrinsic evidence that the buyer assumed the risk of consequential damages and failed to properly mitigate damages: "the awarding of damages for the breach of warranty and incidental [but not consequential] damages provides the 'minimum adequate remedies' mandated by 2–719(2), while maintaining the commercial allocation of risk determined by AES and Coherent." *Id.* at 941–42. Other courts have similarly adopted this case-by-case approach. *E.g., Chatlos Systems v. National Cash Register Corp.*, 635 F.2d 1081, 1085–86 (3d Cir.1980) (New Jersey law); *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363, 1374–76 (9th Cir.1978) (California law) (finding that the relative bargaining power of the parties and the limited nature of the seller's breach warrant enforcement of the consequential damages exclusion despite failure of the limited repair warranty to achieve its essential purpose). *See generally Art Press, Ltd. v. Western Printing Machinery Co.*, 852 F.2d 276 (7th Cir.1988).

■ The rationale underlying *AES Technology Systems* and the other decisions adopting this case-by-case approach is compelling. In some situations, a buyer is simply unaware of the implications of a damages disclaimer accompanying an express warranty and enters into a sales contract with the expectation that the seller will accept responsibility for all of the consequences of the type of warranty breach that renders meaningless any recovery short of consequential damages. With this very situation in mind, some courts have characterized the analysis in terms of unconscionability. *See, e.g., Chatlos Systems*, 635 F.2d at 1086–87.[3] On the other

---

**3.** The foundation for this characterization lies in the U.C.C.:

Consequential damages may be limited or excluded unless the limitation or exclusion is

hand, parties of relatively equal bargaining power deliberately allocate all of the risks that may accompany a breach of warranty, and the courts should exercise some restraint before upsetting that allocation upon a breach of contractual duties. The case-by-case approach enunciated in *AES Technology Systems* provides sufficient flexibility to account for these different situations. Accordingly, we hold that under Illinois law,[4] a buyer may seek consequential damages arising from a seller's breach of warranty despite a disclaimer to the contrary if the buyer can demonstrate that the warranty fails of its essential purpose *and* the parties did not contractually allocate all attendant risks. *Custom Automated Machinery v. Penda Corp.*, 537 F.Supp. 77, 85 n. 3 (N.D.Ill.1982). Of relevance to this latter determination is the intent of the parties beyond that manifested by the disclaimer itself and the relative bargaining power of the parties.

■ Under this guiding proposition of law, Smith has failed to meet his burden in opposition to summary judgment as to damages.[5] There are genuine issues of fact as to whether Navistar's alleged breach caused the warranty to fail of its essential purpose. Smith has presented evidence that he brought the truck to a dealer a number of times and the dealer failed to repair certain defects, including excessive noise and faulty back-up lights. However, Smith has presented no evidence that the parties intended that the defendants shoulder the burden of all consequential damages in the event that the seller failed to fulfill its duty to repair defects within a reasonable time or that Navistar's bargaining power so exceeded Smith's that the disclaimer was unconscionable. Indeed,

Smith's experience in the industry makes a finding of unconscionability unlikely. In short, Smith has identified no evidence in the record from which a trier of fact could conclude that "default of the seller [was] so total and fundamental as to require that its consequential damage limitation be expunged from the contract." *S.M. Wilson & Co.*, 587 F.2d at 1375.

### Summary Judgment on Navistar Financial's Counterclaim

■ Navistar Financial contends that it is entitled to immediate possession of the truck and full payment on the truck as a result of Smith's admitted failure to pay numerous installments and to maintain physical damage insurance on the truck. Smith contends, and we agree, that there are disputed issues of fact going to whether he revoked acceptance of the truck and thereby escaped liability under the installment contract.

Under § 2–608 of the U.C.C.,

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

  (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

  (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the

---

unconscionable.
Ill.Rev.Stat. ch. 26, ¶ 2–719(3).

**4.** Neither *Adams* nor *AES Technology Systems* are binding on this Court. In deciding a substantive issue on which the highest state court in the jurisdiction whose law governs the diversity action has not ruled, a federal court is not bound by the pertinent decisions of that state's lower courts, but must independently predict how the state's highest court would decide the issue. *D'Acquisto v. Washington*, 640 F.Supp. 594, 619 (N.D.Ill.1986). *Adams* is a decision of

a lower appellate court. In *AES Technology Systems*, the Seventh Circuit did not purport to predict how the Illinois Supreme Court would decide this issue. *Accord, KKO, Inc. v. Honeywell, Inc.*, 517 F.Supp. 892, 896–97 n. 5 (N.D.Ill. 1981).

**5.** The party with the burden of persuasion at trial bears the burden of presenting evidence in opposition to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

goods which is not caused by their own defects.

Ill.Rev.Stat. ch. 26, ¶ 2–608.

■ Smith sought revocation of acceptance under § 2–608 when he sent the June 6, 1985 letter to the defendants. In that letter, he identified the defects that he believed had not been remedied and stated "you are hereby notified that Mr. Smith revokes his acceptance of the captioned vehicle." Defendants challenge the effectiveness of this attempted revocation on two grounds. First, defendants contend that Smith did not revoke acceptance within a reasonable time after Jones delivered the truck. Smith has presented evidence from which a trier of fact could reasonably conclude otherwise. Smith gave Navistar numerous opportunities to cure the defects in the truck, returning it ten times between the day he purchased it and the day he attempted to revoke acceptance. He relied upon the seller's warranty that defects would be repaired upon delivery to an authorized dealer. The defect may fairly be characterized as defendants' failure to abide by the terms of the warranty, a defect Smith could only discover after defendants' repeated failure to repair. A seller's assurance (here implicit in the warranty) may extend the time within which a buyer can revoke acceptance. *GNP Commodities, Inc. v. Walsh Heffernan Co.*, 95 Ill. App.3d 966, 51 Ill.Dec. 245, 420 N.E.2d 659 (1st Dist.1981). *See also Ford Motor Co. v. Mayes*, 575 S.W.2d 480 (Ky.App.1978); *Tiger Motor Co. v. McMurtry*, 284 Ala. 283, 224 So.2d 638 (1969) (car owner allowed to revoke acceptance after thirty repair visits spanning eleven months and 20,-000 miles).

■ Defendants next contend that the condition of the truck was substantially changed by the time Smith attempted to revoke acceptance. In support of this contention, defendants point out that Smith drove the truck for over 48,000 miles. We recognize that trucks, like cars, significantly depreciate in value as a result of use and the passage of time. However, we cannot hold as a matter of law that a Navistar F–9370 semi-tractor truck driven over 48,-000 miles has so changed that revocation of acceptance is invalid under § 2–608. Defendants must present more evidence than an odometer reading to prevail on this issue.

■ Finally, defendants contend that even if Smith's revocation was effective, he cannot use the revocation as a defense to his liability under the installment contract. Ordinarily, revocation of acceptance is effective only as against the seller of goods. *Wright v. O'Neal Motors, Inc.*, 57 N.C. App. 49, 291 S.E.2d 165 (1982). However, under Illinois law, a buyer who obtains financing through an entity closely connected to the seller may use the seller's breach of its duties to the buyer as a defense to liability under the financing instrument. *Christinson v. Venturi Const. Co.*, 109 Ill.App.3d 34, 64 Ill.Dec. 674, 440 N.E.2d 226 (5th Dist.1982). This so-called "close connection doctrine" was designed to allow a consumer to implement what is often its only realistic remedy when the seller breaches its duty:

> [W]here two entities are interrelated, and one of the entities breaches an executory contract with a consumer, allowing the consumer to raise the seller's default as a defense against the financing entity provides realistic protection for the consumer. *Id.*, 440 N.E.2d at 229.

Smith has presented evidence tending to show that Navistar and Navistar Financial are so interrelated that Smith should be relieved of its duties under the installment contract in the event Navistar breached the warranty and Smith has effectively revoked acceptance. The companies are related in a corporate family. Navistar participated in the financing transaction, as evidenced by the fact that a Navistar dealer approved the contract for Navistar. With this evidence, Smith has created a factual dispute as to whether Navistar's alleged breach of warranty defeats Navistar Financial's claim under the installment contract. Accordingly, summary judgment on the counterclaim is denied.

### Conclusion

For all these reasons, defendants' motion for summary judgment on Smith's claims is

denied as to liability but granted as to damages. Navistar Financial's counterclaim is denied. It is so ordered.